# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

AUDREY L. BOWIE, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-15-177-KEW
 )
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
 )
       Defendant. )

## OPINION AND ORDER

Plaintiff Audrey L. Bowie (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 22, 1962 and was 51 years old at the time of the ALJ's decision.  Claimant completed her high school education and attended vocational school for cosmetology.  Claimant has worked in the past as a childcare worker.  Claimant alleges an inability to work beginning September 29, 2011 due to limitations resulting from left arm problems as a result of an injury.

**Procedural History**

On January 31, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 21, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") Deborah Rose in Tulsa, Oklahoma. He issued an unfavorable decision on April 12, 2013. The Appeals Council denied review of the ALJ's decision on October 29, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work. Alternatively, the ALJ determined at step five that Claimant retained the RFC to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to perform proper evaluations at steps 4 and 5; and (2) failing to

4

perform a proper credibility determination.

**Steps Four and Five Evaluations**

In his decision, the ALJ found Claimant suffered from the severe impairment of a history of multiple fractures to the left arm. (Tr. 17). The ALJ determined Claimant retained the RFC to perform her past relevant work as a companion sitter. (Tr. 21). Alternatively, Claimant was found to be able to perform light work. In so doing, the ALJ found Claimant could lift/carry 20 pounds occasionally and up to 10 pounds frequently; stand/walk up to six hours during an eight hour workday; and sit for about six hours in an eight hour workday. Claimant was found to be able to perform tasks where there was no requirement for operating any arm or hand controls with her non-dominant left upper extremity. She was able to perform tasks where there is no requirement for overhead reaching with her non-dominant left upper extremity. The ALJ determined Claimant was able to perform tasks where there is only an occasional requirement for handling and fingering with the left upper extremity. Claimant was also able to perform tasks where she may use her left upper extremity as a "helper" or "assist" arm. (Tr. 19). After consulting with a vocational expert, the ALJ concluded that Claimant could perform the representative job of companion for elderly or infirm. (Tr. 22). As a result, the ALJ determined Claimant was not under a disability. (Tr. 23).

5

Claimant first contends that the vocational expert identified jobs which required frequent handling and fingering in contravention of the hypothetical question posed by the ALJ. After the ALJ posed a question which included a restriction from frequent handling and fingering, the vocational expert testified that Claimant had performed the job of day care worker, identified with the *Dictionary of Occupational Titles* ("DOT") number of "359.677-014" - which is associated with the job of funeral attendant. While Claimant is correct that the expert misidentified the number for this job, it is apparent from the testimony that the expert intended DOT #359.677-018 - which is the day care worker job. This error was harmless.

The vocational expert testified Claimant had transferrable skills from her prior employment such that she could work as a companion sitter for the elderly or infirm, identified as DOT #309.677-010. Although this job required frequent handling and fingering as well, the vocational expert testified

> Based on my years of experience, this occupation very often they really are just sitters for people in the hospital or people that are elderly to make sure that they don't rise out of bed. For this job, the employee numbers . . . For this job in this group, which is grouped into the personal caring group, in the state of Oklahoma, 10,000 and in the nation, 820,000. And in my opinion, this job is absolutely consistent with your hypothetical.

(Tr. 60).

While Claimant challenges the vocational expert's use of the term "very often", it is apparent that she did not believe the numbers of available jobs to be reduced by the elimination of the frequent fingering and handling restriction when she then recited the available numbers. "Providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof. Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993); see also 20 C.F.R. § 404.1566(e) (contemplating the use of vocational experts in determining complex issues concerning the characteristics of specific occupations); SSR 00-4p at 2 (noting that information about job requirements not listed in the DOT may come from a VE's experience in job placement or career counseling)." Rogers v. Astrue, 312 F. App'x 138, 142 (10th Cir. 2009). The ALJ adequately explained the vocational expert's deviation from the DOT such that no error is found in her acceptance of the testimony.

**Credibility Determination**

Claimant's injury originated from September 24, 2011 when she sustained a compound fracture of her left forearm. (Tr. 326). She underwent surgery and, afterward, was able to move her fingers and

7

her pain was adequately controlled. (Tr. 198). In December of 2011, Claimant fell and fractured her left wrist and forearm. (Tr. 271). She again underwent surgery resulting in a very satisfactory alignment. (Tr. 254).

In February of 2012, Claimant had good finger extension but experienced some limitation of flexion of the fingers and thumb. (Tr. 250). Claimant attended occupational therapy. In April of 2012, Claimant had surgery to remove the pins and plate in her forearm. She was noted to be progressing well. (Tr. 284). Claimant complained of finger stiffness in May of 2012 and began therapy again. (Tr. 372, 389). Claimant's surgeon found that she was "progressing slowly with therapy." (Tr. 280). In July of 2012, her surgeon found that Claimant's motion had improved but was still limited. (Tr. 308). In August of 2012, he noted Claimant's motion had improved for her fingers and hand/wrist. (Tr. 387). In a follow up visit with her surgeon in September of 2012, Claimant showed active motion for her fingers/hand/wrist but experienced pain. He recommended that Claimant be referred for pain management. (Tr. 404). Claimant lacked the funds to attend pain management and was referred to her primary physician. (Tr. 402).

She received primary care from Lisa J. Clayton, an advanced practice registered nurse. (Tr. 409). Her left forearm and wrist demonstrated tenderness on palpation, abnormal motion with pain

elicited by motion. (Tr. 410). Claimant was prescribed Flexeril and Naproxen. (Tr. 407). At a well woman exam in March of 2013, Ms. Clayton noted Claimant was "in no acute distress." (Tr. 407).

At the hearing, Claimant testified that she was in pain and took Naproxen to manage it. She stated that the medication made her drowsy and constipated. (Tr. 39). She testified that at the end of a five hour workday, she was exhausted and in pain. (Tr. 41). Her arm has caused her to show up late for work and leave early. (Tr. 42). The child care job she was then performing called for her to sit in the classroom but on two or three occasions, she had to leave the room. (Tr. 43). She was not able to lift the children and change their diapers. Id. She stated that she could not make a fist. (Tr. 54).

Claimant testified that she could not grip or pick up anything. She needed help with doing her hair. (Tr. 53). She included in her original application that she could not prepare "full course meals", clean, or do laundry. (Tr. 170).

The ALJ found Claimant's allegations to not be fully credible. (Tr. 20). He based this conclusion on the fact she was not on narcotic pain medication since November of 2012, had not returned to her surgeon or occupational therapy, and was alone with four infants in her child care job. (Tr. 20).
It is well-established that "findings as to credibility should be

closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the

ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds that the ALJ's findings on credibility are affirmatively linked to the objective record and are supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 9th day of September, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE